■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALFREDO V. HERNANDEZ, Appellant.—Appeal by the defendant from a judgment of the County Court, Nassau County (Santagata, J.), rendered August 10, 1984, convicting him of burglary in the second degree (two counts), and possession of burglar's tools, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing of that branch of the defendant's omnibus motion which was to suppress identification testimony.

Ordered that the judgment is modified, on the law, by reversing the conviction of burglary in the second degree as charged in the second count of the indictment, vacating the sentence imposed thereon, and that count of the indictment is dismissed. As so modified, the judgment is affirmed.

The arrest of the defendant in this case was predicated upon a radio transmission that a burglary had been committed, which included a description of the physical appearance and clothing of the suspected burglar, as well as information that the suspect was heading in the arresting officer's direction and might be armed. When the officer first observed the defendant and made eye contact with him, the defendant acted in a furtive manner, going from store to store, changing directions and crossing streets. When coupled with the fact that the defendant initially refused to heed the officer's direction to stop and thereafter could proffer no explanations for his actions, the officer was amply justified in his gunpoint detention and frisk of the defendant (see, People v Rosario, 94 AD2d 329; People v Finlayson, 76 AD2d 670, lv denied 51 NY2d 1011, cert denied 450 US 931). The subsequent showup identification which took place some three or four minutes later, only 20 minutes after the witness's face-to-face viewing of the defendant on the scene, and in close proximity to the crime site, was the type of constitutionally appropriate prompt identification procedure that serves to enhance the reliability of identifications (People v Love, 57 NY2d 1023; People v Brnja, 50 NY2d 366; People v Soto, 87 AD2d 618).

At the Sandoval hearing, the People sought permission to cross-examine the defendant as to alleged prior crimes committed in Cuba. The prosecutor stated that his request was based on published studies which indicated that certain tattoo marks borne by the defendant were placed on inmates in Cuban prisons. The prosecutor added that while he was unable to obtain any documentary proof of the existence of any prison record from Cuba, "I think it is almost common knowledge that a great percentage of the Cubans who did come over

in the flotilla in 1979 and 1980 were people released from Cuban jails". It was clearly improper for the trial court to permit such inquiry where the People failed to articulate a reasonable basis in fact for the allegations and a good-faith basis for making the inquiry *(see, People v Kass,* 25 NY2d 123; *People v Adams,* 107 AD2d 1040). However, in spite of the fact that there was no attempt by the trial court to balance the probative value that this inquiry would have had regarding the defendant's credibility against the potential for unfair prejudice, the error did not discourage Hernandez from taking the stand *(see, People v Sandoval,* 34 NY2d 371). Under the circumstances, and especially since the proof of the defendant's guilt was overwhelming and there was not a significant probability that the jury would have acquitted the defendant but for the error, we conclude that it was harmless *(People v Crimmins,* 36 NY2d 230; *People v Reed,* 56 AD2d 896).

Additionally, comments made by the prosecutor during summation with regard to the defendant's inability to speak English and suggesting that the defendant had committed crimes in Cuba were improper. However, in view of the trial court's immediate curative instructions, as well as the specific and clear instructions given during its charge to the jury, any possible prejudice was quickly dispelled *(People v Ashwal,* 39 NY2d 105). To the extent that any of the prosecutor's comments were improper, any prejudice suffered by the defendant was harmless, and did not deprive him of a fair trial *(People v Crimmins, supra).*

Lastly, however, given the entirely circumstantial nature of the evidence with respect to the first of the two burglaries, it cannot be said, nor can any inference reasonably be made, that there was proof to a moral certainty that the defendant was a participant in that burglary. The absence of proof placing the defendant at the scene or connecting the defendant with the codefendant prior to commission of the second burglary, provides a reasonable hypothesis that one other than the defendant may have committed the first burglary *(see, People v Way,* 59 NY2d 361; *People v Borrero,* 26 NY2d 430). Similarly, it cannot be said that the defendant had "recent and exclusive possession of", or exercised "dominion and control over", the fruits of the first burglary *(see, People v Galbo,* 218 NY 283, 290; *People v Donaldson,* 107 AD2d 758). Accordingly, we find that the trial court should have dismissed the second count of the indictment. With respect, however, to the defendant's conviction for possession of burglar's tools, the jury was free to conclude from the circumstan-

tial evidence that the two flashlights, assorted tools, and two pairs of gloves in his attaché case were possessed for use in committing the second of the two burglaries (Penal Law § 140.35; *see, People v Borrero, supra; People v Smith,* 23 NY2d 955; *People v Wachowicz,* 22 NY2d 369). Brown, P. J., Weinstein, Rubin and Spatt, JJ., concur.